Connie FISHER, Jerry Fisher, Larry Fisher and Nancy Fisher, Appellants,

v.

CHICKASAW COUNTY and Chickasaw County Board of Supervisors, Appellees.

No. 95–580.

Supreme Court of Iowa.

Sept. 18, 1996.

Ronald J. Wagenaar, Mason City, for appellants.

Richard TeKippe, County Attorney, New Hampton, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The Chickasaw County Board of Supervisors (Board) ordered the transfer of Connie, Jerry, Larry, and Nancy Fisher (Fishers) from Liberty Square Care Center (Liberty Square) in Nora Springs, Floyd County, Iowa, to Heritage Residential Facility (Heritage) in New Hampton, Chickasaw County, Iowa. The Fishers challenge the legality of the Board's action in a certiorari proceeding. The district court sustained the action of the Board. We conclude the Board acted legally and its decision is supported by substantial evidence. We affirm.

I. *Background Facts and Proceedings.*

The Fishers are adult mentally disabled family members who have legal settlement in Chickasaw County. *See* Iowa Code § 252.16 (1993). Their parents are deceased. In 1976, the Fishers, along with their mother, were privately placed in Liberty Square. They have lived in the facility since being placed there and continue to require supervised care and training. Each of them received Supplemental Security Income (SSI) and State Supplemental Assistance (SSA), which paid for their room and board at Liberty Square.

Prior to August 1993, Chickasaw County did not fund or provide any mental health or vocational services for the Fishers. In August 1993, Gary Ammen, the new director of Liberty Square, notified Chickasaw County of its statutory obligation to provide services for the Fishers. As the county of legal settlement, Chickasaw County has the duty to fund services for the Fishers as mentally disabled individuals. *See id.* § 222.60.

As a result, the Fishers began receiving additional services paid by Chickasaw County to facilitate their transition to a less structured or independent living arrangement. Since February 1994, the Fishers have attended living skill training activities at Liberty Square and have worked, with supervision, at Comprehensive Systems in Charles City, Floyd County, Iowa. Although the Fishers

may be able to live in a less restrictive environment in the future, they now require a supported living environment and supervised sheltered employment.

In February, the Board contacted Ammen and notified him of its intention to transfer the Fishers to Heritage. The Fishers requested a hearing on the proposed transfer, which was held with the Board on May 16. Those in attendance included the Fishers, the Chickasaw county auditor, the Chickasaw county attorney, Ammen, representatives of Comprehensive Systems, and the attorney for the Fishers. No verbatim record was made of the hearing.

At the hearing, the Fishers presented evidence showing that they were opposed to being removed from Liberty Square and that the transfer was not in their best interests. There was also evidence that the transfer would be more cost effective for Chickasaw County. On May 24, the Board passed a resolution stating that it was in the Fishers' best interests to be transferred to Heritage and that the transfer was scheduled for June 13.

On June 13, the Fishers filed a petition for writ of certiorari in district court. The transfer was stayed pending final disposition of the certiorari action. Trial on the writ of certiorari began on December 6. The Fishers again testified that they were opposed to the transfer and that it was not in their best interests. The district court allowed Chickasaw County and the Board to present testimony explaining the reasons for the transfer, despite Fishers' objection that the evidence was not presented at the hearing before the Board. This evidence included testimony from the board chairman, the mental health judicial advocate, the Fishers' case manager, the administrator of Heritage, and the vocational supervisor of Comprehensive Systems.

On March 28, 1995, the district court entered an order sustaining the action of the Board, thereby annulling the writ of certiorari. The court concluded that the Board did not exceed its proper jurisdiction or act illegally, and that the Board's decision was supported by substantial evidence.

On appeal, the Fishers challenge the district court's admission of additional evidence at the hearing and the legality of the Board's resolution transferring them to Heritage.

## II. Scope of Review.

Certiorari is an action at law which tests whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally. Iowa R. Civ. P. 306; *French v. Iowa Dist. Ct. for Jones County,* 546 N.W.2d 911, 913 (Iowa 1996). Our review of the judgment entered by a district court in a certiorari proceeding is governed by the rules applicable to appeals in ordinary actions. Iowa R. Civ. P. 318. Thus, review is for correction of errors at law, not de novo. *City of Des Moines v. Civil Serv. Comm'n,* 540 N.W.2d 52, 55 (Iowa 1995). The factual findings of the district court have the effect of a jury verdict and are binding upon us if supported by substantial evidence. Iowa R.App. P. 14(f)(1); *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). The court's legal conclusions, however, are not. We will sustain a writ of certiorari where the board acted beyond its authority or jurisdiction. *City of Des Moines,* 540 N.W.2d at 55; *see* Iowa R. Civ. P. 306.

## III. Additional Evidence Under Iowa Rule of Civil Procedure 315.

The Fishers urge the district court erred in admitting evidence at trial that was not submitted at the hearing before the Board. Iowa Rule of Civil Procedure 315 provides:

When full return has been made, the court shall fix a time and place of hearing, and hear the parties upon the record made by the return. *In its discretion,* it may receive any transcript of the evidence taken in the original proceeding, and such *other oral or written evidence as is explanatory of the matters contained in the return.* Such transcript and *additional evidence shall be considered for the sole purpose of determining the legality of the proceedings, and the sufficiency of the evidence before the original tribunal, board or offi-*

*cer* to sustain its, or his action, unless otherwise specifically provided by statute. (Emphasis added.)

We have held that "in certiorari, the only additional evidence which is permitted is an explanation of matters in the return." *Mangan v. Department of Pub. Safety,* 258 Iowa 359, 364, 138 N.W.2d 922, 926 (1965). Under our rule, the court has discretion to receive evidence at a certiorari hearing. Iowa R. Civ. P. 315.

· Here, the district court heard testimony from both sides. The Fishers testified that they enjoyed their living arrangement at Liberty Square and that they were opposed to being transferred to Heritage. Ammen testified as to the Fishers' best interests. The district court then heard evidence, over objection of the Fishers, from individuals who had not appeared at the Board's hearing.

The individuals who testified had consulted with the Board and reported that Heritage would provide comparable or better opportunities for the Fishers. Further, they testified that, based on the Fishers' previous adjustments to new situations, they would adjust quickly to the move without any long-term adverse effects. Arnold Boge, the chairman of the Board, testified that before the Board reached a conclusion and passed its resolution, it had consulted with the mental health judicial advocate, the Fishers' case manager, the administrator of Heritage, and the vocational supervisor of Comprehensive Systems. A financial cost statement, identified by Boge, was admitted by the district court. The exhibit documented the potential financial cost of caring for the Fishers during their lifetime if they stayed at Liberty Square. In addition to the concern for the best interests of the Fishers, Boge testified the Board considered the financial impact of transferring the Fishers before passing the resolution.

■ We believe the district court was justified in allowing this additional evidence. The testimony explained the matters contained in the return to writ. The court had discretion to receive testimony and exhibits to determine the legality of the proceedings and the sufficiency of the evidence.

IV. *Legality of Board's Action.*

■ The Fishers' second argument on appeal is that the district court erred in finding that Chickasaw County and the Board acted legally in ordering the involuntary transfer of the Fishers and in finding the Board's decision was supported by substantial evidence. Our rule provides that "unless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction...." Iowa R. Civ. P. 316. Generally, illegality exists when the findings on which the court has based its conclusions of law do not have substantial evidentiary support or when the court has not applied the proper rule of law. *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Poweshiek County,* 530 N.W.2d 725, 726 (Iowa 1995).

■ The burden of showing illegality rests upon the party making that assertion. *Thompson v. City of Osage,* 421 N.W.2d 529, 531 (Iowa 1988). An illegality is established if an inferior board's decision is not supported by substantial evidence. *City of Cedar Rapids v. Municipal Fire & Police Retirement Sys.,* 526 N.W.2d 284, 287 (Iowa 1995). Evidence is substantial "when a reasonable mind could accept it as adequate to reach the same findings." *Id.* (citation omitted).

The Fishers argue the Board exercised a quasi-judicial function in its decision to transfer the Fishers from Liberty Square. They urge the involuntary transfer of residents of a residential care facility is not allowed except for medical reasons, *the welfare of the residents,* or for nonpayment of costs. *See* 481 Iowa Admin. Code r. 63.34(1) (1991) (emphasis added). They claim the Board considered its own best interests, not the Fishers' best interests.

By its very nature, the Board must have some flexibility in its decision-making process.' The power of a county is vested in its board of supervisors. Iowa Code § 331.301(2). By statute,

a county may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the county or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents....

*Id.* § 331.301(1). In exercising its discretion, the Board addressed two main considerations.

■ The first concern of the Board was the best interests of the Fishers. Before passing its resolution, the Board consulted several professionals in the mental health field to determine whether Heritage could meet the needs of the Fishers. The Board considered the opinion of Donna Meck, the mental health judicial advocate for the first, second, and seventh judicial districts. Meck's position as an advocate requires her to preserve the rights of those individuals under court commitment or adjudged to be incompetent. She met with the Fishers to discuss the proposed move. In her opinion, the move to Heritage would not be necessarily adverse, and the Fishers would readily adjust to the new environment. Her testimony was based on fourteen years of experience and numerous examples of individuals who had lived for long periods of time in one place and then had to move.

The Board also talked with Sharon Trewin, the Fishers' case manager. She, too, had visited with the Fishers. In her opinion, the Fishers would be capable of adjusting to the move and there would be no long-term adverse effects.

In regard to potential employment for the Fishers in New Hampton, the Board consulted Theresa D'Lobassa, the vocational supervisor of Comprehensive Systems. In her opinion, Comprehensive Systems in New Hampton would provide comparable or better opportunities for the Fishers than those at Comprehensive Systems in Charles City.

Finally, the Board consulted Elaine Sweet, a case management supervisor and Heritage administrator. She had spent some time with the Fishers and talked to the Board about the care the Fishers would receive at Heritage. At the district court hearing, Sweet testified that the Fishers would receive as good or better care living at Heritage where many recreational activities are available. Any short-term trauma would be easily handled because Heritage has twenty-four hour access to psychologists and psychiatrists.

The Board's other concern involved financial considerations. As the county of legal settlement, Chickasaw County is required to pay for "... the treatment, training, instruction, care, habitation, support and transportation ..." provided to the Fishers. Iowa Code § 222.60. Even though the overall cost for room, board, and services may be the same at both Liberty Square and Heritage, Chickasaw County would save a substantial amount of money by transferring the Fishers. For individuals whose legal settlement is in Chickasaw County, Heritage accepts their SSI and SSA as payment in full for room, board, and services. Heritage is able to do this because most of its operating costs are fixed and do not vary as residents come and go. In contrast, if the Fishers continued living outside Chickasaw County, the County would still be required to pay the actual cost for their services, which is a sum exceeding $37,000 annually.

This is a substantial amount and is one that a fiscally responsible county should consider, particularly when the projected cost to Chickasaw County for services in Floyd County for the Fisher family, over their expected lifetime at Liberty Square, would be approximately one million dollars. Although cost should not be the only factor considered, it can play a role in the Board's decision-making process.

The Board's action was not illegal and was supported by substantial evidence. We conclude the district court correctly sustained the action of the Board.

**AFFIRMED.**